UNION INSURANCE COMPANY,
Petitioner/Cross–Respondent,

v.

Richard HOUTZ and Robert Jeffrey Etheridge, Respondents/Cross–Petitioners.

No. 93SC306.

Supreme Court of Colorado,
En Banc.

Nov. 7, 1994.

Rehearing Denied Nov. 29, 1994.

Rothgerber, Appel, Powers & Johnson, Franklin D. O'Loughlin, Patrick Q. Hustead, Michael D. Plachy, Denver, for petitioner.

Schey & Schey, P.C., Donald H. Alspaugh, James H. Nelson, Longmont, for respondents.

Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review an order by the court of appeals in *Houtz v. Union Insurance Co.*, 865 P.2d 847 (Colo.App.1993), which reversed summary judgment in favor of Union Insurance Company (Union). The court of appeals held that Richard Houtz (Houtz) and Robert Jeffrey Etheridge (Etheridge) (the insureds) were entitled to $300,000 from Union, an amount representing the limit of liability under Union's uninsured/underinsured (UM/UIM) motorist coverage. We hold that the insureds are entitled to $60,000 in UM/UIM motorist coverage, in accordance with the unambiguous language in Union's policy. We further hold that Union's method of calculating underinsurance benefits, by aggregating amounts received by both injured insureds, does not violate public policy. We therefore reverse the judgment of the court of appeals and remand for further proceedings consistent with this opinion.

I.

The parties stipulated to the relevant facts. On February 24, 1988, the insureds were loading a disabled vehicle onto a transport trailer along the shoulder of Interstate 70. The insureds were standing behind the trailer when a vehicle driven by Thomas Eisinger swerved onto the shoulder and struck them. Both men suffered extensive injuries. Houtz's right leg was severely fractured, and his left leg was amputated. Etheridge suffered a head injury and both of his legs were fractured. The parties agreed that Eisinger's negligence was the cause of the accident, and that the insureds suffered damages equal to or exceeding $300,000 each.

Eisinger's vehicle was insured under an automobile liability policy issued by Farmers Insurance Exchange (Farmers). The Farmers policy provided liability coverage of up to $100,000 per person and $300,000 per occurrence. The insureds made claims against Farmers, Eisinger, and other individuals alleged to have been legally responsible for Eisinger's negligence. The insureds settled their claims against those parties, and received a total of $240,000. The payment in settlement was divided between the two insureds: Houtz received $127,500, and Etheridge received $112,500.[1] The settlement amount included $100,000 each to Houtz and Etheridge under the Farmers policy.

The vehicle which was hauling the transport trailer was insured under a policy issued by Union to Anytime Auto Service Corporation. The Union policy provided UM/UIM motorist coverage with a liability limit of $300,000.[2]

In an effort to receive additional compensation for their injuries, the insureds made a claim against Union under the UM/UIM motorist provision of the policy, arguing that Union was liable to the limit of liability of $300,000. The insureds argued that, under the language of the policy, the amount of underinsurance should be calculated separately for each injured insured, and that

---

1. Union also paid personal injury, medical, and rehabilitation benefits to Etheridge and Houtz. The parties agree that those amounts should not be offset from benefits received under the UM/UIM motorist coverage.

2. Under § 10–4–609, 4A C.R.S. (1994), an insurer is required to offer UM/UIM coverage.

Union should pay them the collective amount by which they were underinsured, up to the $300,000 limit of liability. Under the insureds' calculation, since Houtz received $127,500 from the tortfeasor and the tortfeasor's carrier, Houtz was still underinsured by $172,500. Similarly, Etheridge argued that he was underinsured by $187,500, the difference between what he had received, $112,500, and the limit of liability under Union's UM/UIM motorist coverage. The insureds argued that they were underinsured by a total of $360,000. Since the limit of liability was $300,000, they argued that they were entitled to the entire $300,000.

Union took the position that the policy only required it to pay $60,000 in UM/UIM motorist benefits. Union arrived at this figure by adding the entire settlement amount received by both insureds from Farmers and the tortfeasor, for a total of $240,000. Union then subtracted that amount from the $300,000 limit of liability, and determined that the insureds were underinsured by $60,000. Union maintained that it would satisfy its obligations under the policy by virtue of a $60,000 payment, and offered to pay $60,000 to the insureds. The insureds accepted the $60,000, reserving the right to argue that they were entitled to the entire $300,000.

The insureds filed an action for declaratory relief under C.R.C.P. 57, requesting that the Union policy be interpreted to allow them to recover $300,000 under the policy's UM/UIM motorist provision. The parties filed cross-motions for summary judgment. On January 17, 1992, the trial court issued an order granting summary judgment in favor of Union. The court held that the language of the policy as a whole indicated that the limit of liability should be applied against all claims, rather than against each individual claimant. The court concluded that Union had met its coverage requirements under the policy.

The insureds appealed the decision of the trial court. On March 11, 1993, the court of appeals issued its opinion reversing the judgment of the trial court. The court agreed with Union that, under section 10–4–609, 4A C.R.S. (1987), an insurer may aggregate the amount of damages paid to each insured, and use that figure to offset underinsurance benefits.[3] However, the court of appeals went on to hold that the limit of liability language in the Union policy, as distinguished from the language in the statute, was susceptible to two equally reasonable meanings, creating an ambiguity in the extent of coverage in the policy. The court construed the ambiguity against the drafter, Union, and held that Union was required to pay $300,000 to the insureds.

3.  In relevant part, § 10–4–609, 4A C.R.S. (1987), provides as follows:

**10–4–609. Insurance protection against uninsured motorists.** (1) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 42–7–103(2), C.R.S., under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; except that the named insured may reject such coverage in writing.

. . . .

(4) Uninsured motorist coverage shall include coverage for damage for bodily injury or death which an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle, the ownership, maintenance, or use of which is insured or bonded for bodily injury or death at the time of the accident, but the limits of liability for bodily injury or death under such insurance or bonds are:

(a) Less than the limits for uninsured motorist coverage under the insured's policy; or

(b) Reduced by payments to persons other than an insured in the accident to less than the limits of uninsured motorist coverage under the insured's policy.

(5) The maximum liability of the insurer under the uninsured motorist coverage provided shall be the lesser of:

(a) The difference between the limit of uninsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or

(b) The amount of damages sustained, but not recovered.

## II.

Union first argues that the court of appeals erred in holding that the language of the policy is ambiguous. Union maintains that the policy, read in its entirety, allows Union to aggregate damages from each injured insured when calculating the amount of UM/UIM benefits due under its policy. We agree.

As with any case of contract interpretation, we look to the language of the policy to ascertain the intent of the parties. *Parrish Chiropractic Ctrs., P.C. v. Progressive Casualty Ins. Co.*, 874 P.2d 1049, 1055 (Colo.1994). The relevant portions of the policy provide as follows:

### SECTION VI—DEFINITIONS

. . . .

E. "Insured" means any person or organization qualifying as an insured in the Who Is an Insured provision of the applicable coverage. *Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.*

. . . .

### COLORADO UNINSURED MOTORISTS COVERAGE

. . . .

A. COVERAGE

1. We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle." ...

. . . .

B. WHO IS AN INSURED

1. You[4]

2. If you are an individual, any "family member."

3. Anyone else "occupying" a covered "auto". . . . The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

. . . .

D. LIMIT OF INSURANCE

1. *Regardless of the number of covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for all damages resulting from any one "accident" is the least of the following:*

a. The LIMIT OF INSURANCE for UNINSURED MOTORISTS COVERAGE shown in the Declarations.

b. *The difference between the limit of this insurance and all amounts paid to an "insured" by or for anyone legally liable for damages* resulting from "bodily injury," including all sums paid under this Coverage Forms LIABILITY COVERAGE; ....

. . . .

F. ADDITIONAL DEFINITIONS

. . . .

3. "Uninsured motor vehicle" means a land motor vehicle or trailer:

. . . .

b. That is an underinsured motor vehicle. An underinsured motor vehicle for which the sum of all liability bonds or policies at the time of an "accident" provides at least the amounts required by the applicable law ... but their limits are:

(1) ·Less than the limit of this coverage, ... [.]

(Emphasis added.)

The court of appeals held that the policy was ambiguous because the "an 'insured' " language in subsection D.1.b. of the UM/UIM limit of liability section could reasonably be interpreted in two ways. The insureds interpreted the language to allow them each to recover the difference between the policy limit and what each insured received from the tortfeasor. Union argued that the language referred to the class of insureds under the policy, and that the $300,000 liability limit was a per-accident limit, and not a per-person limit. The court of appeals concluded

---

4. The first page of the "GARAGE COVERAGE FORM" provides the following definition: "Throughout this policy the words "you" and "your" refer to the NAMED INSURED shown in the [Garage] Declarations [Anytime Auto Service Corp.]."

that since both interpretations of "an 'insured'" were reasonable, there was an ambiguity in the contract which would be construed against the drafter of the document, Union, and in favor of broader coverage for the insureds.

The court of appeals held that section 10–4–609(5), 4A C.R.S. (1987), was *unambiguous* and that it allowed an insurer to aggregate amounts received by its insured for purposes of underinsurance benefits. That section provides:

> (5) The maximum liability of the insurer under the uninsured motorist coverage provided shall be the lesser of:
>
> (a) The difference between the limit of uninsured motorist coverage and the amount paid to *the insured* by or for any person or organization who may be held legally liable for the bodily injury; or
>
> (b) The amount of damages sustained, but not recovered.

(Emphasis added.) The court of appeals nonetheless found that Union's policy was ambiguous because it used the term "*an* 'insured'" rather than "*the* insured," as used in the statute.[5]

The interpretation of a contract, including a contract for insurance, is a matter of law which we review *de novo*. *General Ins. Co. of America v. Smith*, 874 P.2d 412, 414 (Colo.App.1993), *cert. denied* (Colo. May 23, 1994) (No. 94SC10). The terms of an insurance policy are interpreted in accordance with general rules of contract interpretation, *Wota v. Blue Cross and Blue Shield of Colorado*, 831 P.2d 1307, 1309 (Colo.1992), and should be construed to promote the intent of the parties. *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 17 (Colo.1990). The policy must be enforced as written, unless there is an ambiguity in the policy language. *Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1359 (Colo.1993).

A policy provision is ambiguous if it is susceptible to more than one reasonable interpretation. *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 60 (Colo. 1990). Once an ambiguity in the policy language is found, it is construed against the drafter of the document and in favor of the insured. *Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236, 239 (Colo.1992).

In determining whether there is an ambiguity in a policy provision, the court must evaluate the policy as a whole using the generally accepted meaning of the words employed. *Wota*, 831 P.2d at 1309; *J & S Enterprises, Inc. v. Continental Casualty Co.*, 825 P.2d 1020, 1023 (Colo.App.1991) ("[A]ll parts and clauses of a contract, including exceptions and conditions, must be considered together in order to determine if one particular clause is explained, modified, limited, or controlled by any other clause."), *cert. denied* (Colo. Mar. 10, 1992) (No. 91SC509). A mere disagreement between the parties regarding the interpretation of the policy does not create an ambiguity. *Terranova*, 800 P.2d at 60.

The insureds argue that the policy term "an 'insured,'" as used in section D.1.b. of Union's UM/UIM motorists coverage, means that the $300,000 limit of liability applies to each of them separately, for purposes of calculating their underinsurance. They argue that Houtz was "an 'insured,'" and that Etheridge was "an 'insured,'" under the policy language. Union asserts that "an 'insured'" means the class of insureds under the policy.

However, the term "an 'insured'" cannot be read in isolation to create an ambiguity in the policy as a whole where none exists. We find that the policy, read in its entirety, clearly allows Union to aggregate damages in calculating underinsurance benefits. The definitional section of the policy provides:

> E. "Insured" means any person or organization qualifying as an insured in the Who Is an Insured provision of the applicable coverage. *Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is*

---

**5.** We find that the court of appeals did not need to address this issue, and we decline to address it now. Our task in this case is to construe the language of *this* policy, and not the language of the statute.

*seeking coverage or against whom a claim or "suit" is brought.*

(Emphasis added.)

The court of appeals recited this portion of the policy, but nonetheless concluded that "an 'insured,' " as used in the UM/UIM limit of liability provision, was an ambiguous policy term. In doing so, it failed to give effect to the plain meaning of the policy language, and rendered the policy provision meaningless. On the contrary, we find that this provision of the policy is dispositive. It states that the limit of liability under the UM/UIM motorist coverage applies separately to each insured *except with respect to the Limit of Insurance.* The corollary to this language is that the limit of liability does not apply separately to each injured insured, but applies to the accident. Therefore, Union may deduct all credits received from the accident, regardless of the number of people involved, in calculating underinsurance benefits.

The Limit of Insurance section of the UM/UIM coverage provision supports our interpretation. That provision provides as follows:

> 1. *Regardless of the number of* covered "autos," "*insureds,*" premiums paid, *claims made* or vehicles involved in the "accident," *the most we will pay for all damages resulting from any one accident is the least of the following:*
>
> a. The LIMIT OF INSURANCE for UNINSURED MOTORISTS COVERAGE shown in the Declarations [$300,000] [or]
>
> b. The difference between the limit of this insurance and all amounts paid to an "insured". . . .

(Emphasis added.)

Read in its entirety, this language indicates that all damages from one accident should be considered collectively, despite the fact that there is more than one "insured," and despite the fact that more than one claim is made. The insureds' position, that each of their claims should be considered separately

for calculation of underinsurance benefits, would be contrary to this plain policy language.

The parties concede that the limit of liability under the UM/UIM provision is $300,000. If, as argued by the insureds, the claims were applied to the limit individually, the combined amount of the separate claims would exceed the contract limit of insurance coverage. Therefore, in order to comply with the plain language of the policy—"the most we will pay for all·damages resulting from *any one* accident is ... [$300,000]"—all claims arising out of that accident must be collectively applied against the limit of $300,000 to avoid exceeding the contract limitation.

Finally, while we generally interpret contract terms in accordance with their plain, ordinary meanings, our resolution of the policy term "an 'insured' " cannot turn on the definition of the word "an." This is so because the Union policy specifically defines the word "insured."

In the general definitional section of the policy, the term "insured" is defined as follows:

> SECTION VI—DEFINITIONS
>
> . . . .
>
> E. "Insured" means any person or organization qualifying as an insured in the Who Is an Insured provision of the applicable coverage.

In the "Who Is an Insured" provision of the UM/UIM motorist coverage, the policy identifies the insureds as follows:

> B. WHO IS AN INSURED
>
> 1. You [Anytime Auto Service Corporation]
>
> 2. If you are an individual, any "family member."
>
> 3. Anyone else "occupying" a covered "auto". . . .

As the word "insured" is defined in the policy, the term "an 'insured' " could mean any one of the group of insureds, without necessarily meaning *each* insured.[6] Further-

---

**6.** The court of appeals noted that the term "an 'insured' " was not clarified by reference to the four other "Limit of Insurance" provisions in the

policy. However, the absence of that term is not meaningful because none of those provisions

more, the policy uses the term "each insured" when that is the intended meaning, i.e. "Except with respect to the Limit of Insurance, the coverage afforded applies separately to *each insured* who is seeking coverage...." (Emphasis added.) The parties could easily have substituted the term "each insured" for "an 'insured'" if their intent had been to calculate the amount of underinsurance separately.

We find that the Union policy, read in its entirety, unambiguously limits the scope of Union's liability to $300,000 per accident. Since the policy provides that the limit of liability does not apply separately to each insured, Union correctly aggregated the damages received by the insureds when it calculated the amount owed under the policy.

## III.

We also granted certiorari to consider whether allowing an insurer to aggregate damages in this manner is a violation of public policy.[7] The insureds argue that allowing Union to aggregate damages from each injured insured is contrary to the intent of the legislature because it impairs their ability to obtain compensation for a loss caused by a financially irresponsible motorist. They argue that the legislature intended to provide for maximum compensation within policy limits, and that to deduct one insured's recovery from another's in determining underinsurance benefits fails to maximize the insureds' recovery.

■■■ An insurance policy provision is void and unenforceable, even if unambiguously written, when the effect of the provision is to dilute or avoid a legislative mandate. *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 60 (Colo.1990). We find, however, that Union's policy does not interfere with the legislative purpose of the UM/UIM stat-

ute. We therefore hold that an insurer may aggregate the amount of damages from multiple insureds for purposes of calculating the amount of benefits due under underinsurance motorist coverage without violating public policy.

### A.

We first examine the legislative history of Colorado's UM/UIM statute to discern the purpose of the legislature in enacting the statute. Colorado's first uninsured motorist statute was enacted in 1965, as part of the Motor Vehicle Financial Responsibility Act. Act approved Apr. 30, 1965, ch. 91, sec. 2, 1965 Colo.Sess.Laws 333, 334. In enacting the statute, the legislature confirmed its strong policy interest in protecting people who are injured by uninsured motorists. The declaration of purpose provided as follows:

> The general assembly is acutely aware of the toll in human suffering and loss of life, limb, and property caused by negligence in the operation of motor vehicles in our state.... [T]he general assembly is also very much concerned with the financial loss visited upon innocent traffic accident victims by negligent motorists who are financially irresponsible.... [I]t is the policy of this state ... to assure the widespread availability to the insuring public of insurance protection against financial loss caused by negligent financially irresponsible motorists.

In 1983, the legislature amended the statute to include underinsurance coverage within the uninsured motorist coverage statute. Act approved May 4, 1983, ch. 92, sec. 1, 1983 Colo. Sess. Laws 454, 455.[8] The current version of the statute, section 10–4–609, 4A C.R.S. (1994), requires insurers to include UM/UIM coverage in each motor vehicle lia-

---

contains a clause similar to the UM/UIM motorist limit of liability clause.

7. The court of appeals held that Union was required to calculate each insured's benefits separately. Accordingly, the court did not reach the public policy issue.

8. In *Shelter Mutual Insurance Co. v. Thompson*, 852 P.2d 459, 463 (Colo.1993), we quoted the comments of Representative Bath who explained the proposed 1983 amendments to the legislature. Representative Bath explained that, by including underinsurance benefits coverage, the legislature would eliminate the situation where a person was better off if injured by an uninsured driver than an underinsured driver.

bility policy issued to an insured, subject to a written waiver by the insured. The UM/UIM statute requires that insurers offer minimum levels of both uninsured and underinsured motorist coverage. *See* § 10–4–609(1), (4), 4A C.R.S. (1994). It also limits the maximum liability for both types of insurance. *See* § 10–4–609(5), 4A C.R.S. (1994); *see also Shelter Mut. Ins. Co. v. Thompson,* 852 P.2d 459, 463 (Colo.1993). In relevant part, the statute provides as follows:

> **10–4–609. Insurance protection against uninsured motorists.** (1) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 42–7–103(2), C.R.S., under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; except that the named insured may reject such coverage in writing.
>
> . . . .
>
> (4) Uninsured motorist coverage shall include coverage for damage for bodily injury or death which an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle, the ownership, maintenance, or use of which is insured or bonded for bodily injury or death at the time of the accident, but the limits of liability for bodily injury or death under such insurance or bonds are:
>
>> (a) Less than the limits for uninsured motorist coverage under the insured's policy; or
>>
>> (b) Reduced by payments to persons other than an insured in the accident to less than the limits of uninsured motorist coverage under the insured's policy.
>
> (5) The maximum liability of the insurer under the uninsured motorist coverage provided shall be the lesser of:
>
>> (a) The difference between the limit of uninsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or
>>
>> (b) The amount of damages sustained, but not recovered.

§ 10–4–609(1), (4), (5), 4A C.R.S. (1994).

We have recognized that the legislative intent of Colorado's UM/UIM motorist statute is to "provide an insured with benefits to the extent necessary to recover for loss caused by a negligent and financially irresponsible motorist, subject to policy limits." *Kral v. American Hardware Mut. Ins. Co.,* 784 P.2d 759, 765 (Colo.1989); *Shelter Mutual,* 852 P.2d at 462 (quoting *Kral,* 784 P.2d at 765); *Barnett v. American Family Mut. Ins. Co.,* 843 P.2d 1302, 1305 (Colo.1993) (quoting *Kral,* 784 P.2d at 765). The intent of the legislature is served when a person injured by an uninsured or underinsured motorist receives insurance coverage to the same extent as a person injured by an insured motorist. *Terranova,* 800 P.2d at 61; *Shelter Mutual,* 852 P.2d at 463.

### B.

The insureds first argue that an insured who purchases underinsurance benefits intends to provide maximum coverage to the insured and the insured's dependents. Therefore, they conclude that the limit of liability under the UM/UIM statute should be applied to each of them separately, to fulfill the legislative intent of ensuring that the insured receive maximum compensation within policy limits.

In construing various policy provisions under the UM/UIM statute, we have not hesitated to invalidate insurance policy provisions which usurp the intent of the legislature. For example, in *Newton v. Nationwide Mutual Fire Insurance Co.,* 197 Colo. 462, 594 P.2d 1042 (1979), the insurer's policy provided that the insurer could set off from unin-

sured motorist benefits the amount received by the insured for personal injury protection. In comparing the personal injury coverage with uninsured motorist coverage, we concluded that the benefits available under the two were not necessarily duplicative, and that they were separate contractual provisions for which separate premiums were charged. *Id.* at 465–66, 594 P.2d at 1043–44. We held that the policy provision violated public policy because it allowed the insurer to circumvent the statutorily required minimum amount of uninsured motorist coverage. *Id.* at 466, 594 P.2d at 1044.

In *Barnett v. American Family Mutual Insurance Co.*, 843 P.2d 1302 (Colo.1993), we invalidated an insurance provision which allowed the insurer to deduct Social Security Disability benefits received by the insured from underinsurance benefits due under the policy. *Id.* at 1304. Relying on the rationale of *Newton*, we reasoned that an insurer cannot absolve its liability by deducting an amount received for "separate and distinct insurance benefits," for which separate premiums were paid. *Id.* at 1307.

In those cases, we found the policy provisions to be contrary to public policy because the effect of those provisions was to place the insured in the same position as if the insured had opted not to purchase UM/UIM coverage. The insured therefore received no value for the added premium. The provision essentially rendered the UM/UIM coverage illusory.

In this case, however, the insureds paid an insurance premium for UM/UIM benefits with a per-accident liability limit of $300,000. Union then deducted the amount received by the insureds from the *tortfeasor*, not from benefits due under a "separate and distinct" insurance policy.[9] Union's UM/UIM coverage was not illusory. The insureds received value for their UM/UIM insurance premium to the extent of the policy limit.

The insureds cite *Kral v. American Hardware Mutual Insurance Co.*, 784 P.2d 759 (Colo.1989), in support of their argument. In *Kral*, we recognized that the UM/UIM statute contemplates an award of benefits to the extent necessary to compensate victims of uninsured and underinsured motorists. *Id.* at 766. However, we also held that the amount of benefits is *subject to the limits in the policy. Id.* In *Kral*, the insurer was attempting to avoid paying the policy limit by setting off sums from unrelated sources.

In this case, however, Union deducted amounts received from the tortfeasor and the tortfeasor's carrier. Since we interpret the Union UM/UIM policy provision to include a $300,000 limit of liability *per accident*, the insureds were fully compensated up to that limit, which is consistent with our holding in *Kral.*

The insureds' theory of recovery would be inconsistent with the per-accident limit of liability. Indeed, the insureds seek to be placed in the same position as if they were injured in separate accidents. The policy provision does not violate public policy simply because we interpreted the limit of liability to apply per accident, rather than per person.

While we realize that the insureds will never be fully compensated for their loss, we see no evidence that the legislature intended to award the insureds more than they would have received if the tortfeasor had been insured or uninsured. We conclude that Union's method of aggregating damages under this policy is not contrary to public policy.

Accordingly, we reverse and remand for further proceedings consistent with this opinion.

KIRSHBAUM, J., dissents, and LOHR and SCOTT, JJ., join in the dissent.

9. In *Barnett*, we held that it was not a violation of public policy for an insurer to set off amounts received from a party legally liable for damages when calculating UM/UIM benefits. We concluded that "both UM/UIM benefits and payments by the uninsured/underinsured motorist serve the same purpose of 'protection against financial loss caused by negligent and financially irresponsible motorists.'" *Barnett*, 843 P.2d at 1307 n. 4 (quoting § 42–7–102, 17 C.R.S. (1984)).

Justice KIRSHBAUM dissenting.

This case requires the construction of certain language contained in a limitation of liability section of an uninsured motorist endorsement to an insurance policy drafted by the petitioner, Union Insurance Company (Union). The court of appeals found the language to be ambiguous. The majority holds that the language is not ambiguous. Because I believe application of the appropriate standards supports the court of appeals' conclusion, I respectfully dissent.

The determination of whether an ambiguity exists in a written contract is a question of law. *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo.1990). A contractual provision is ambiguous if, given the "plain, popular, and generally accepted meaning of the words employed," *Heller v. First Ins. Exch.*, 800 P.2d 1006, 1008 (Colo. 1990), it is subject to two possible interpretations. *Davis v. M.L.G. Corp.*, 712 P.2d 985, 989 (Colo.1986). Once an ambiguity appears, the court must examine the contract as a whole to determine if any of the other provisions might resolve the ambiguity. *Travelers Ins. Co. v. Jeffries–Eaves, Inc.*, 166 Colo. 220, 223, 442 P.2d 822, 824 (1968). If the ambiguity remains and therefore the challenged provision is susceptible to two different but reasonable meanings, the provision must be construed against the drafter thereof. *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1090 (Colo.1991); *Coxen v. Western Empire Life Ins. Co.*, 168 Colo. 444, 448, 452 P.2d 16, 17 (1969).

The central issue in this case is whether the term "an 'insured'" appearing in section D.1.b. of an insurance policy admittedly providing some coverage to the respondents, Richard Houtz and Robert Jeffrey Etheridge, refers to each individual insured or to both of them collectively. The section in question contains the following relevant language:

D. LIMIT OF INSURANCE

1. Regardless of the number of covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for all damages resulting from any one "accident" is the least of the following[:]

. . . .

b. The difference between the limit of this insurance and all amounts paid to *an* "insured" by or for anyone legally liable for damages. . . .

(emphasis added).

The majority states that resolution of the term "an 'insured'" cannot turn on the definition of the word "an" because the word "insured" is defined separately in the policy. Maj. op. at 1062. However, as the court of appeals' opinion notes, by using the term "an 'insured'" Union significantly deviated from the language employed by the General Assembly establishing the limits of uninsured motorist coverage insurers must offer. The statute establishing such limits contains the following pertinent provisions:

(5) The maximum liability of the insurer under the uninsured motorist coverage provided shall be the lesser of:

(a) The difference between the limit of uninsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or

(b) The amount of damages sustained, but not recovered.

§ 10–4–609(5), 4A C.R.S. (1994).

The word "the," as it appears in the statute, is not ambiguous. The word "an," as it appears in the policy, creates an ambiguity. The suggestion that we may ignore the fact that the drafters of the Union policy selected the word "an" rather than the word "the" in effect suggests that in its description of the policy's limits we should ignore this critical difference. The presence of the word "an" before the word "insured" directly affects the interpretation of the term "an 'insured.'"

The majority apparently concedes that the term "an 'insured'" is subject to two contrasting interpretations. The majority makes the following observations:

As the word "insured" is defined in the policy, the term "an 'insured'" could mean any one of the group of insureds, without necessarily meaning *each* insured.

Maj. op. at 1062 (emphasis in original). It is precisely this difficulty—that two reasonable

interpretations of the term "an 'insured' " are invited by the contract language—that establishes the ambiguity found by the court of appeals.

The uninsured motorist provision of the policy contains the following pertinent language: [10]

A. COVERAGE

1. We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

. . . .

B. WHO IS AN INSURED

1. You.

2. If you are an individual, any "family member."

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

. . . .

D. LIMIT OF INSURANCE

1. Regardless of the number of covered "autos," "insureds," premiums paid claims made or vehicles involved in the "accident," the most we will pay for all damages resulting from any one accident is the least of the following [:]

a. The LIMIT OF INSURANCE for UNINSURED MOTORISTS COVERAGE shown in the Declarations.

b. The difference between the limit of this insurance and all amounts paid to an "insured" by or for anyone legally liable

for damages resulting from "bodily injury," including all sums paid under this Coverage Form's LIABILITY COVERAGE.

c. The amount of damages sustained but not recovered.

2. Any amount payable under this coverage shall be reduced by all sums paid or payable under any workers compensation, disability benefits or similar law.

3. Any amount paid under this insurance will reduce any amount an "insured" may be paid under this Coverage Form's LIABILITY COVERAGE.

Section VI.E. of the policy defines the word "insured" as follows:

E. "Insured" means any person or organization qualifying as an insured in the Who Is an Insured provision of the applicable coverage. Except with respect to the Limit of Insurance the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

As the petitioners argue, the term "an 'insured' " appearing in the Limit of Insurance section D.1.b. of the uninsured motorist coverage endorsement can be construed to refer to any one member of any of the classes defined elsewhere in the policy as an "insured." This construction is a reasonable one—as is the construction proposed by Union and adopted by the majority. The fact that the language supports two reasonable interpretations establishes the fact of its ambiguity.

The majority suggests that the drafters of the Union policy generally use the words "the 'insured' " when referring to an individual insured. While this observation is accurate, the drafters also use the words "an 'insured' " to mean "the 'insured' " in a portion of the uninsured motorist endorsement describing available arbitration remedies.[11]

---

10. The GARAGE COVERAGE FORM of the policy, which is here applicable, provides as follows: "Throughout this policy, the words 'you' and 'your' refer to the Named Insured shown in the Declarations." Pursuant to the policy Declarations, Anytime Auto Service Corp. is the Named Insured.

11. The applicable provision contains the following pertinent language:

ARBITRATION

A. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of

In view of this inconsistency and the fact that the drafters of the policy chose to ignore the language of the applicable statute, it cannot be said that the use of the word "an" is merely superfluous.

We have previously observed that definitions contained in recognized dictionaries may be consulted to determine the ordinary meaning of words. *See Hecla Mining Co.,* 811 P.2d at 1091–92 (citing *People v. Forgey,* 770 P.2d 781, 783 (Colo.1989)). The petitioner points out that when used before a noun, the words "a" or "an" have been defined as referring to a singular object, 1 *Oxford English Dictionary* 4 (2d ed. 1989), and to "not any particular or certain one of a class or group." *Random House Dictionary of the English Language* 1 (2d ed. unabridged 1987). The respondents note that the latter dictionary also defines the words "a" or "an" as referring to multiple, similar individuals. *Id.* It is noteworthy that in *Black's Law Dictionary* 77 (5th ed. 1979), the word "an" is defined as "An English indefinite article, equivalent to 'one' or 'any'; seldom used to denote plurality." The word "an" itself apparently has more than one meaning—a further circumstance suggesting that the term "an 'insured'" is ambiguous.

In construing a contract a court must give effect to every provision thereof, if possible. *Lawrence St. Partners v. Lawrence St. Venturers,* 786 P.2d 508, 510 (Colo.App.1989); *see also Heller,* 800 P.2d at 1008. The description of coverage contained in the uninsured motorist coverage endorsement to the policy provides that Union will pay "all sums *the 'insured'* is legally entitled to recover as damages from the owner or driver of an 'uninsured motor vehicle'" (emphasis added).

damages, either party may make a written de-

The definition of the word "insured" set forth in section VI.E. of the contract indicates that coverage is afforded separately to each insured except with respect to the Limit of Insurance. The construction of the term "an 'insured'" urged by Union and adopted by the majority ignores the language of the policy indicating that the coverage afforded applies separately to each insured. If the amount of damages paid to each insured from other sources could be aggregated and offset against any uninsured motorist benefits for which Union may be liable, the provision that the coverage afforded applies separately to each insured who is seeking coverage would have no meaning. The exception, therefore, would swallow the rule. In my view, the language of section D.1.b. of the uninsured motorists coverage provision of the contract is ambiguous, and the ambiguity is reinforced by other provisions of the contract.

In such circumstances, we do not select either of two competing reasonable constructions of contract language, but rather adopt whichever construction favors the party who did not draft the agreement. In this case, the court of appeals properly applied that legal principle. I therefore would affirm the result reached by that court, and respectfully dissent from the majority's contrary view.

LOHR and SCOTT, JJ., join in the dissent.