**DEISCH AND MARION, P.C.,**
**Plaintiff–Appellee,**

v.

**INTERNATIONAL INSURANCE COM-**
**PANY, an Illinois corporation,**
**Defendant–Appellant.**

**No. 87CA1364.**

Colorado Court of Appeals,
Div. III.

Jan. 5, 1989.

Rehearing Denied Feb. 2, 1989.

Deisch, Marion & Breslau, P.C., Brad W. Breslau, Denver, for plaintiff-appellee.

Zarlengo, Mott, Zarlengo and Winbourn, Karen R. Wells, Denver, for defendant-appellant.

VAN CISE, Judge.

Defendant, International Insurance Company (International), appeals the entry of judgment in favor of plaintiff, Deisch and Marion, P.C. (the law firm). We affirm.

The law firm was retained by Ideal Mutual Insurance Company (Ideal) to represent its Kansas insured, Speed King Manufacturing Company, Inc. (Speed King), in a products liability action brought against Speed King in the United States District Court for the District of Colorado. The Ideal policy under which Speed King was insured had primary coverage of $500,000 aggregate per policy period. During that policy period, International was an umbrella or excess carrier for Speed King.

In December 1984, Ideal went into receivership. Thereafter, the products liability claim against Speed King was settled for a $175,000 contribution on behalf of Speed King by the Kansas Insurance Guaranty Association (KIGA) which had assumed coverage as a result of Ideal's receivership. KIGA agreed to compensate the law firm for its services and costs incurred subse-

quent to December 26, 1984, the date of Ideal's insolvency, but declined to pay for services prior to that date. The law firm then filed suit against International for the fees and costs incurred in defending Speed King prior to Ideal's insolvency, basing its claim on the theory of implied contract.

After a trial to the court, judgment for $19,026.43 plus costs was entered in favor of the law firm. This appeal followed.

The sole issue in this case is whether International is liable for the law firm's fees and costs in the absence of exhaustion of the primary insurance. We find International liable and therefore affirm the trial court.

The elements of an implied contract are: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for defendant to retain the benefit without payment of the value thereof. *Dass v. Epplen*, 162 Colo. 60, 424 P.2d 779 (1967). Also, before such recovery may be had, a court must find a duty which justifies imputing a promise to perform. *Schuck Corp. v. Sorkowitz*, 686 P.2d 1366 (Colo.App.1984).

The factual findings made by the trial court pertaining to elements (1) and (2) are supported by the record, and we will not disturb them. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979). As admitted by International in its trial brief, and at oral argument, the, services that were rendered by the law firm for Speed King and the primary insurance carrier, Ideal, were of benefit to the excess carrier, International, whether it wanted the benefit or not. It had no choice to accept or reject.

Thus, the only factor which, being an issue of equity, we may review is whether, under the circumstances of this case, it would be inequitable for International to retain the benefit of the law firm's work product without paying for it and for the law firm to have performed the services without compensation from anyone.

The relevant provision in the insurance policy provides:

"With respect to any occurrence not covered, as agreed, by the underlying policies listed in Schedule A hereof or not covered by any other underlying insurance collectible by the insured, but covered by the terms and conditions of this policy except for the amount of retained limit specified in Item 4(C) of the declarations, the company shall:

"(a) defend any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

An examination of Schedule A shows that the occurrence in the product liability claim was covered by the terms and conditions of the policy. Also, according to Item 4(C) in the policy, the retained limit was "zero." Because of the insolvency of Ideal, the underlying (primary) insurance coverage was not "collectible by the insured," Speed King, at least for purposes of Item 4(C) and defense costs. *See Morgan v. Farmers Insurance Exchange*, 182 Colo. 201, 511 P.2d 902 (1973). Thus, by its very terms, the insurance contract provides that International had a duty to defend. And, as stated by the trial court, "it would be inequitable to permit [International] to have the benefit of the defense provided by [the law firm] without paying for it."

We agree with the trial court that "the portion of the insurance contract relied upon by [International] pertains to indemnification as opposed to [this] duty to defend," and is therefore inapplicable here.

JUDGMENT AFFIRMED.

STERNBERG and CRISWELL, JJ., concur.