FARMERS INSURANCE EXCHANGE
and Truck Insurance Exchange,
Plaintiffs–Appellants,

v.

Richard L. WIGLESWORTH and Eric
J. Pierce, Defendants–Appellees.

No. 93CA1265.

Colorado Court of Appeals,
Div. A.

Nov. 17, 1994.

As Modified on Denial of Rehearing
Dec. 29, 1994.*

Certiorari Granted Aug. 28, 1995.

* Sternberg, C.J., would grant.

Anderson, Campbell & Laugesen, P.C., Franklin D. Patterson, Yvonne M. Kreye, Denver, for plaintiffs-appellants.

McDermott, Hansen & Reilly, Gerald P. McDermott, Denver, for defendant-appellee Richard L. Wiglesworth.

Purvis, Gray, Schuetze & Gordon, William R. Gray, Glen F. Gordon, Boulder, for defendant-appellee Eric J. Pierce.

Opinion by Judge CASEBOLT.

Plaintiffs, Farmers Insurance Exchange (Farmers) and Truck Insurance Exchange (Truck), appeal: (1) the summary judgment which held that defendant Richard L. Wiglesworth was entitled to insurance coverage under their policies as a permissive driver for claims asserted by defendant Eric Pierce arising out of an automobile accident; and (2) the judgment after trial that the Truck umbrella policy "dropped down" to provide "first dollar" coverage for all excess liability over the insurance limits actually paid by the Farmer's policy. We conclude that the issue of permissive use is governed by the insurance policy language and that the trial court incorrectly interpreted the law concerning that issue. We further conclude that the umbrella policy contains inconsistent and ambiguous provisions, must be interpreted against plaintiffs, and therefore provides "drop down" coverage if permissive use was involved. Consequently, we reverse in part, affirm in part, and remand for further consideration by the trial court.

During the relevant time period, Wiglesworth was living in Loveland, Colorado, with a friend's parents (Smiths) under a written contract which governed, in part, his conduct. The Smiths owned a pickup truck which was insured under a Farmers policy and a Truck umbrella policy. Wiglesworth had no automobile or other insurance coverage of his own.

The Smiths provided Wiglesworth with a set of keys to the pickup and permitted him to drive it back and forth to work without requesting further permission. He was required, however, to ask permission before taking the pickup anywhere other than to work, although permission to do so had never been denied when requested.

On the night of the accident, Wiglesworth was scheduled to work but instead took the pickup to Longmont to retrieve some personal items from the home of a former girlfriend. The record indicates that Wiglesworth never intended to go to work, that the Smiths were not home at the time he left with the pickup truck, and that he did not request permission to take the pickup to Longmont. When the Smiths learned that Wiglesworth was not at work, they called the police to report him missing with their vehicle and asserted that he might have stolen it.

While in Longmont, Wiglesworth participated in a drag race with a second vehicle. Eric J. Pierce, a passenger in this second vehicle, was injured when it collided with a third vehicle during the drag race. In an underlying suit, Pierce sued Wiglesworth and the other participants in the drag race. The suit resulted in a judgment against Wiglesworth for approximately $56,000.

Subsequently, Farmers and Truck brought the instant declaratory judgment action to determine whether, and to what extent, they were required to provide coverage to Wiglesworth under the Smiths' insurance policies. In ruling on cross-motions for summary judgment, the trial court held that it was undisputed that Wiglesworth had permission to take the pickup to work, and that, under the court's interpretation of *Bukulmez v. Hertz Corp.*, 710 P.2d 1117 (Colo.App.1985), *rev'd in part on other grounds sub nom. Blue Cross v. Bukulmez*, 736 P.2d 834 (Colo.

1987), Colorado utilized the "initial permission" test for determining permissive use. Hence, the trial court determined that, at the time of the accident, Wiglesworth was entitled to coverage.

The trial court further ruled that, because Wiglesworth was a "non-family member" permissive user under the policy, the available liability coverage was $25,000 as required by the Colorado Auto Accident Reparations Act.

In the trial on the remaining issues, the trial court determined that the Truck umbrella policy "dropped down" to provide "first dollar" coverage for all excess liability over the minimum limits of $25,000, even though the umbrella policy required underlying insurance of $250,000.

## I.

Farmers and Truck contend that the trial court erred in holding, as a matter of law, that Wiglesworth was a permissive driver, and therefore an "insured" entitled to coverage under the policies. We agree that the court erred in its interpretation of prevailing Colorado law on this issue.

As a threshold matter, we must first determine whether this issue is governed by the terms of the policies, by the Colorado Auto Accident Reparations Act (No–Fault Act), case law, or some combination thereof.

■ We note that, in the absence of statutory inhibition, an insurer may impose any terms and conditions consistent with public policy as it sees fit. *Chacon v. American Family Mutual Insurance Co.*, 788 P.2d 748 (Colo.1990).

■ An insurance company may adopt a broader definition of "insured," but cannot define those covered in such a way as to dilute, restrict, or condition coverage required by the No Fault Act. *Meyer v. State Farm Mutual Automobile Insurance Co.*, 689 P.2d 585 (Colo.1984).

■ A separate division of this court has held that a "permissive user" restriction does not violate the No–Fault Act and is consistent with public policy. *Winscom v. Garza*,

843 P.2d 126 (Colo.App.1992). The *Winscom* court upheld a policy provision that defined "insureds" as any person using the vehicle, provided that the use is with the permission of the named insured and within the scope of such permission. This holding was predicated upon § 10–4–703(6), C.R.S. (1994 Repl. Vol. 4A), which defines an insured as:

> the named insured, relatives of the named insured who reside in the same household as the named insured, or persons using the described motor vehicle with the permission of the named insured.

Further support for this holding is found in § 10–4–707(1), C.R.S. (1994 Repl.Vol. 4A) (coverages are applicable to any person while occupying the described motor vehicle with the consent of the insured), and § 10–4–712, C.R.S. (1994 Repl.Vol. 4A) (exclusions authorized when the injured person is operating a vehicle as a converter without a good faith belief that he or she is legally entitled to operate or use the vehicle).

Here, the Farmers policy includes as an insured "any person using [the] insured car," but specifically excludes "any person who uses a vehicle without having sufficient reason to believe that the use is with the permission of the owner." The Truck policy defines an insured as "a person using an auto ... with a reasonable belief that the person is so entitled...."

We conclude that these exclusions are valid and do not violate the No–Fault Act because they do not limit the compulsory statutory classification of "insureds" to whom Farmers and Truck are obligated to provide coverage. *See Winscom v. Garza, supra.* In our view, both policies provide at least the same, if not broader, coverage as that mandated by statute. In reaching this conclusion we note the policies do not require "actual permission" as could be inferred to be the standard under § 10–4–703(6); rather, by their use of "reason to believe" and "reasonable belief" they adopt a more relaxed, subjective test for determining permissive use.

Contrary to defendant's contentions, we do not read *Bukulmez v. Hertz Corp., supra,* to impose an "initial permission" rule here. In *Bukulmez,* a rental car company rented a car to a driver who allowed his eighteen-year-old son to operate it, contrary to the rental contract. After an accident occurred, a passenger in the car asserted her entitlement to PIP coverage from Hertz, under Hertz' self insurance coverage.

Hertz asserted that it was not responsible for PIP benefits because the vehicle was being operated in violation of the rental agreement. A division of this court disagreed, holding that § 10–4–705 of the No–Fault Act required PIP coverage by owners of vehicles who operate or knowingly permit operation of vehicles on the public highways of this state.

In response to Hertz' contention that it did not knowingly permit its rental car to be operated, the court stated:

> We do not construe § 10–4–705 to require that the owner have knowledge and give permission to each individual who will be driving the car on public roads before coverage under the Act becomes compulsory. Rather, once the owner has knowledge that the car will be driven on public highways and gives permission for it to be so driven, coverage is required under the Act, *unless the exclusions of § 10–4–712, C.R.S. apply.* (emphasis added)

Section 10–4–705, C.R.S. (1994 Repl.Vol. 4A), relied upon in *Bukulmez, supra,* describes when *coverage* by an owner is required, but does not itself deal with permissive use *exclusions* in the context presented here. Rather, such exclusions are contained in §§ 10–4–703(6) and 10–4–707(1), C.R.S. (1994 Repl.Vol. 4A), as well as § 10–4–712, C.R.S. (1994 Repl.Vol. 4A), the section cited in the quoted portion of *Bukulmez.*

Additionally, Hertz did not argue in *Bukulmez* that any statutory conditions or exclusions applied and Hertz did not consider the eighteen-year-old driver a converter without a good faith belief that he was legally entitled to operate or use the rental car. Moreover, the court noted that the plaintiff passenger was occupying the vehicle with the permission of the named insured; hence, a "permissive use" question was not presented there.

In sum, *Bukulmez, supra,* held only that a self insured owner of a vehicle may not contractually limit its statutory obligation to provide PIP coverage to "an insured." Thus, *Bukulmez* does not control the issue in this case. Here, as in *Winscom v. Garza, supra,* the insurer's permissive use exclusion does not impermissibly exclude or restrict the classification of "insureds" to whom the insurer must extend compulsory coverage. Hence, we conclude that the inquiry concerning permissive use is governed by the policy terms, and not by the No–Fault Act.

In determining whether an individual is operating a motor vehicle with permission of an insured, Colorado courts have evaluated all of the circumstances, including the scope of the permission given and the use by the individual at the time the accident occurred. *See Ewing v. Colorado Farm Mutual Casualty Co.,* 133 Colo. 447, 296 P.2d 1040 (1956) (vehicle was operated outside scope of permission where permittee gave car to a second individual who then drove to a party); *Berthrong v. Certified Indemnity Co.,* 31 Colo. App. 81, 497 P.2d 1273 (1972) (no violation of permission where unlimited use of car granted and permittee then allowed another to drive but remained in the car).

We also find guidance for determining permissive use in Restatement (Second) of Torts § 228 (1965). That Restatement section deals with acts of conversion and indicates that such an act is established when a person's use of a chattel exceeds the permitted use. Restatement (Second) of Torts § 228 comment c (1965) states, in part:

> The limits of the permitted use ordinarily are determined by the terms, express or reasonably to be implied, of the contract or other agreement between the parties, and the question becomes one of whether there is a material breach of the agreement.

*See Maryland Casualty Co. v. Messina,* 874 P.2d 1058 (Colo.1994) (using the quoted Restatement comment in remanding coverage issue to the trial court for a factual analysis of whether 1) employee had permission to use employer's vehicle at the time of the accident, and 2) whether employee had a good faith belief that she was entitled to use the vehicle at the time of the accident).

■ Hence, we conclude that in determining whether Wiglesworth had a reasonable belief that he had "permission" to use the vehicle under the Farmers policy and was "entitled" to use the vehicle under the Truck policy, the trial court should examine the express and implied terms of any contract or agreement between the Smiths and Wiglesworth, as well as any other relevant circumstances including, but not limited to, the historical use allowed, the scope of permission given, and the use by Wiglesworth at the time the accident occurred.

■ The trial court's finding of permissive use here was predicated upon its erroneous holding that the "initial permission" rule applied. Because the trial court must utilize a different permissive use analysis and make a factual determination of permissive use, we conclude that summary judgment was inappropriate and that the matter must be remanded for the trial court to determine whether Wiglesworth had permission to operate the pickup at the time of the accident under the tests established by the insurance policies and the views expressed in this opinion.

## II.

In the event the trial court determines that Wiglesworth had the requisite permission, the remaining issue concerning the "drop down" application of the Truck policy will arise. Accordingly, we address that issue here.

Truck asserts that the trial court erred in holding that the Truck umbrella policy provides "first dollar" coverage for damages in excess of the amount provided by the Farmer's policy. We disagree and conclude that, if the trial court determines that Wiglesworth is entitled to coverage under the policies, the Truck policy will "drop down" to cover damages in excess of the $25,000 provided by the Farmer's policy.

■ An insurance policy is a contract that should be interpreted consistently with the principles of contract law. *Republic Insurance Co. v. Jernigan,* 753 P.2d 229 (Colo. 1988). The interpretation of a contract, in-

cluding a contract of insurance, is a matter of law which we review *de novo*. *General Insurance Co. v. Smith*, 874 P.2d 412 (Colo. App.1993).

In interpreting an insurance policy a court should give words their plain and ordinary meaning unless the intent of the parties, as expressed in the policy, indicates that an alternative interpretation is intended. However, when policy provisions are inconsistent or ambiguous, construction against the drafting party is required. *State Farm Mutual Automobile Insurance Co. v. Nissen*, 851 P.2d 165 (Colo.1993). Thus, when contractual provisions are susceptible of more than one reasonable interpretation, and their intent cannot otherwise be determined, they must be construed in favor of providing coverage to the insured. *Union Insurance Co. v. Houtz*, 883 P.2d 1057 (Colo.1994).

Here, the trial court ruled that the insurance available to Wiglesworth under the Farmer's policy language was the minimum mandated by the No–Fault Act, or $25,000 per individual, rather than the $250,000 per individual set forth in the policy. This determination was reached under language which specified the amount of insurance available to permissive users who were not family members. This holding has not been appealed and is, thus, binding upon us.

The trial court then held that the Truck policy provided excess coverage starting at the first dollar beyond the $25,000 of underlying coverage. On appeal, Truck argues that the Truck policy will only cover claims in excess of the $250,000 limit specified by the underlying Farmer's policy.

The Truck umbrella policy provides under "Part IV—Limits of Liability":

Regardless of the number of persons insured, claims or injured persons, the most we will pay as damages resulting from one occurrence shall not exceed the amount in Item 4 of the Declarations, subject to the following:

1. If underlying insurance and this policy cover an occurrence which results in personal injury or property damage, we will pay damages which exceed the *total applicable underlying insurance.*

2. If underlying insurance terminates or its liability limits are less than shown in Item 3 of the Declarations, we pay damages we would have paid if underlying insurance *had not terminated or its limits lessened.* (emphasis added)

The Truck policy defines "underlying insurance" as "the insurance scheduled in the Declarations which is collectible by the insured." The Declarations set forth the $250,000 limits which are provided by the Farmer's insurance policy. The Truck policy then states that "[T]his policy shall pay damages only in excess of the underlying insurance."

Finally, the policy provides a notice in bold type which reads as follows:

IMPORTANT NOTICE: You have told us you have underlying insurance policies with the liability limits listed above. *If your underlying insurances have lesser limits than shown above,* you will be unprotected for the difference. You must keep the above coverages and limits in effect to avoid these gaps in your protection. (emphasis added)

The umbrella policy provides that Truck "will pay damages which exceed the *total applicable underlying insurance,*" yet the term "applicable" is not defined.

If "applicable" means that amount which is stated in the underlying policy declarations, the policy can be interpreted to mean that coverage under the Truck umbrella policy is not triggered until the insurer under the primary policy actually pays $250,000. However, if "applicable" means that amount actually paid, then the policy can be interpreted to mean that the payments under the policy must be made as soon as *any* amount is received from the underlying policy.

More importantly, the phrase "underlying insurance" is not defined in an unambiguous way and is reasonably susceptible of more than one meaning under these factual circumstances. The policy provides that "underlying insurance" is "the insurance scheduled in the Declarations which is *collectible* by the insured". (emphasis added) Again, that term is not defined in the policy.

Cases defining "collectible" have almost uniformly arisen in the context of insolvency or bankruptcy of the underlying carrier and are thus not helpful here, particularly when the Truck policy contains additional provisions dealing with those contingencies.

Definitions contained in recognized dictionaries may be consulted to determine the ordinary meaning of words. *See Hecla Mining Co. v. New Hampshire Insurance Co.,* 811 P.2d 1083 (Colo.1991). "Collectible" is defined in *Webster's Third New International Dictionary* 444 (1986) as "due for present payment," "capable of being collected," "exchangeable for cash" and "payable." "Collectible," then, is subject to the same differing interpretations noted above. It can mean that amount which is stated in the declarations of the underlying policy or, conversely, the amount actually collected or received by the insured from that underlying policy.

In addition, the repeated language which warns the insured that the underlying policies must be kept in full effect and that the insurer will not pay if the "limits" are "lessened" is not clear under these circumstances. Wiglesworth reads these references to provide a warning to the insured that there will be a coverage gap if the insured takes some affirmative step to lower the amount of coverage provided by the underlying policy. Thus, under the factual circumstances of this case, it can be argued that the "limits" of the underlying policy were not "lessened" because the $250,000 "limits" remained the same, while the factual circumstances changed the amount that was forthcoming from those "limits."

However, it could also be read as suggested by Truck, *i.e.,* that a gap in coverage will result if for any reason, including operation of the underlying policy, the underlying coverage is not in the full amount listed in the Declarations of either policy.

We conclude that all of the policy provisions quoted above, when considered together, are inconsistent and ambiguous on the crucial issue before us: Does the Truck umbrella policy provide excess coverage when, by virtue of its language, the underlying policy provides coverage at less than the full amount set forth in its Declarations? Accordingly, in accordance with the principles stated previously, we construe the policy terms against the drafter, Truck, and in favor of the insured. *See Ryder Truck Rental, Inc. v. Guaranty National Insurance Co.,* 770 P.2d 1380 (Colo.App.1989).

■ Wiglesworth argues that he qualifies as an insured under the Truck policy because he was under age 21 and was "in the care of" a named insured within the meaning of the policy provisions. This contention was initially asserted in Pierce's counterclaim and was denied by Farmers and Truck in their reply. However, this issue was not raised in the parties' motions for summary judgment, nor was it addressed by the trial court.

We conclude that, because we are not the factfinder under these circumstances, it would be inappropriate for us to consider this issue on appeal. *See Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979). Wiglesworth or Pierce may raise the issue anew before the trial court on remand.

Therefore, if permissive use is shown, we affirm the holding of the trial court that the Truck umbrella policy provides first dollar coverage for Wiglesworth's liability above the $25,000 coverage afforded by the Farmer's insurance policy.

The summary judgment determining Wiglesworth is a permissive user and therefore entitled to coverage under the Farmers and Truck policies is reversed. The judgment holding that the Truck umbrella policy "drops down" to provide first dollar coverage for Wiglesworth's permissive use liability over the $25,000 coverage afforded by the Farmers policy is affirmed, and the cause is remanded for further proceedings consistent with those expressed in this opinion.

KAPELKE, J., concurs.

STERNBERG, C.J., concurs in part and dissents in part.

Chief Judge, STERNBERG, concurring in part and dissenting in part.

I concur in Part II of the majority opinion but, because I believe that the "initial per-

mission rule" should apply in permissive user cases, I respectfully dissent as to Part I of the majority opinion.

In my view, particularly after the adoption of No Fault statutes by most states in this country over the last decade, it has become more and more apparent that an insurance policy exists for the benefit of members of the general public as well as for the benefit of the insured.

The Colorado Automobile Accident Reparations Act (No Fault Act) was adopted to avoid inadequate compensation of persons injured by motor vehicles. Section 10–4–702, C.R.S. (1994 Repl.Vol. 4A). To that end, liability coverage is mandated so as to assure that persons injured in vehicle accidents will be compensated for those injuries. However, adopting a rule which permits inquiry into the use made of the vehicle, the scope of permission, the purpose of use, etc., will necessarily lead to increased litigation and will result in inadequate and unpredictable compensation to persons injured in automobile accidents.

While criticized by treatise writers of several years ago, see, e.g., 6C J. Appleman, *Insurance Law & Practice* § 4366, the initial permission rule which I urge recognizes the need for certainty in permissive use cases: once permission is given and the keys handed over, that driver is covered under the owner's policy, even if he deviates in the use, the scope, or the purposes of the initial grant of permission.

One difficulty with allowing inquiry into the scope of permission is that an innocent third party may find his or her recovery dependent upon the question whether it was "reasonable" for the driver to take a certain route, or to travel to one specific destination rather than to another. Indeed, here, Pierce could be faced with the formidable task of arguing that Wiglesworth could reasonably believe he had permission to engage in a drag race. As between the parties, the person who enabled the permissive user to be on the road in the first place, *i.e.*, the owner, should more appropriately bear the risk of loss than the member of the general public sharing the road with the permissive user.

*Winscom v. Garza*, 843 P.2d 126 (Colo. App.1992) does not require a different result than that which I am urging. *Winscom* holds that a permissive use exclusion in an automobile insurance policy does not violate or conflict with the intent of the No Fault Act. It does not address the question, what is "permission." In *Winscom*, the vehicle was being driven by the boyfriend of the insured's daughter. The insured had specifically forbidden the boyfriend from driving the vehicle. *Winscom* is a "no permission," not an "initial permission" case.

Here, in distinction, the insureds gave the driver access to the vehicle and provided him with his own set of keys, thus permitting him to drive the vehicle without specifically asking for permission each time.

I understand the holding of the majority that the insurance policy in this case is broader than the statute; however, I do not agree with that rationale. The statute discusses "permission." *See* § 10–4–703(6), C.R.S. (1994 Repl.Vol. 4A). There is no further refinement of this term in the statute, nor is there a discussion of the scope of permission. Inquiry into the reasonable belief of the permitted user is not required by the statute.

In my view, an injured party's recovery should not turn on his ability to prove a driver's reasonable belief in the extent of his permission. To do so will lead to a proliferation of litigation and to haphazard, capricious, and unpredictable compensation of innocent third parties who are injured by permissive users of motor vehicles.

For these reasons, I would affirm the judgment of the trial court.