Jeffrey L. SHEAN, individually and as surviving spouse of Katrina Shean, decedent, and as surviving parent of Brandon Shean, decedent, and as parent and guardian of Michael J. Shean, a minor, and Michael J. Shean, a minor, by and through Jeffrey L. Shean; Tyrina A. Dean, individually and as executrix of the Estates of Sherman L. Surrette and Gloye L. Surrette; Matthew P. Dean; and Amber L. Dean, a minor, by and through her mother and next friend, Tyrina A. Dean, Plaintiffs–Appellants,

v.

FARMERS INSURANCE EXCHANGE, a reciprocal or interinsurance exchange, and Mid–Century Insurance Company, a California corporation, Defendants–Appellees.

No. 95CA0235.

Colorado Court of Appeals,
Div. IV.

July 25, 1996.

Rehearing Denied Aug. 29, 1996.

Certiorari Denied March 17, 1997.

Cederberg Law Firm, P.C., James A. Cederberg, Boulder, for Shean Plaintiffs–Appellants.

Buchanan, Jurdem & Zulauf, P.C., Ross B.H. Buchanan, Denver, for Dean Plaintiffs–Appellants.

Levy & Lambdin, P.C., Suzanne Lambdin, Stuart D. Morse, Englewood, for Defendants–Appellees Farmers Insurance Exchange and Mid–Century Insurance Co.

Opinion by Judge DAVIDSON.

In this declaratory judgment action seeking interpretation of an insurance policy, plaintiffs, Jeffrey L. Shean, Tyrina A. Dean, Matthew P. Dean, and Amber L. Dean, appeal from a judgment of the trial court limiting their recovery for underinsured motorist damages to that available under one of four policies issued by defendants, Farmers Insurance Exchange and Mid–Century Insurance Company, collectively known as the Farmers Insurance Group of Companies (insurer). We affirm.

In July 1991, an underinsured motorist caused a three-vehicle collision which killed five people and seriously injured five others. The parties stipulated that the underinsured motorist was at fault, that all seven victims represented here—the driver of a van and his six passengers—were insureds under four policies that insurer issued to the driver of the van, and that each suffered damages in excess of $50,000. As a result of an interpleader action, plaintiffs, as a group, received $77,170 under the liable motorist's $100,000 insurance policy in compensation for their damages, and the three victims in the other car received the remainder.

The "Uninsured Motorist Coverage (Including Underinsured Motorist Coverage)," part of the policies at issue, *inter alia,* defines an underinsured motorist, sets the extent of coverage at $50,000 per person and $100,000 per occurrence by reference to the policy's coverage declarations, and further qualifies the coverage through sections labelled "Exclusions," "Limits of Liability," and "Other Insurance."

The "Other Insurance" section of the uninsured motorist section contains several numbered clauses which provide that:

1. We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

2. The amount of Uninsured Motorist Coverage we will pay under [the Coverage Declarations, *i.e.,* $50,000 per person or $100,000 per occurrence] shall be reduced by the amount of any other bodily injury

coverage available to any party held to be liable for the accident.

3. Except as provided in the preceding paragraph, if any other collectible insurance applies to a loss covered by this part, we will pay only our share. Our share is the proportion that our limits of liability bear to the total of all applicable limits.

4. We will not provide insurance for a vehicle other than your insured car, unless the owner of that vehicle has no other insurance applicable to this part.

5. If any applicable insurance other than this policy is issued to you by us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

Thus, each policy under which plaintiffs claim damages provided underinsured motorist coverage limits of $50,000 per person and $100,000 per occurrence, but included a clause limiting recovery to the limits of one policy if, as here, more than one policy was issued by insurer.

Plaintiffs filed suit, claiming they were entitled to $50,000 per insured victim, offset by the $77,170 already paid, under the four identical policies issued by insurer to the driver of the van for four separate vehicles.

On cross-motions for summary judgment, the trial court determined that the policies unambiguously limited plaintiffs' recovery to $22,830, the difference between the $100,000 per occurrence liability limit of one policy and the damages paid by the underinsured motorist. We agree with the trial court.

## I.

■ Plaintiffs first contend that the trial court erred in finding the policy language unambiguous and, therefore, in failing to construe the policies to permit plaintiffs to recover to the limits of each. Plaintiffs argue the policy is ambiguous because clauses 3 and 5 of the Other Insurance section quoted above establish different limits for insurer's liability. Specifically, plaintiffs assert, while clause 5 limits compensation to that provided by a single policy issued by insurer, clause 3 provides for more generous compensation calculated as a proportion of plaintiffs' loss up to the limit imposed by the coverage declaration of each policy. This contention is premised on plaintiffs' interpretation of "other collectible insurance" to include the driver's other three policies. We disagree.

■ In construing a policy, so as to enforce it as written, we must give words their plain meaning according to common usage and must avoid strained constructions of the language used. *Allstate Insurance Co. v. Starke*, 797 P.2d 14 (Colo.1990). A provision of a policy is ambiguous and must be interpreted by the court when, upon being evaluated within the policy as a whole, *Union Insurance Co. v. Houtz*, 883 P.2d 1057 (Colo. 1994), it is reasonably susceptible to more than one meaning. *Northern Insurance Co. v. Ekstrom*, 784 P.2d 320 (Colo.1989).

■ In interpreting policy language, a court must construe the terms used as they would be understood by a person of ordinary intelligence, *State Farm Mutual Auto. Insurance Co. v. Nissen*, 851 P.2d 165 (Colo. 1993) evaluating the policy language and the factual circumstances to which it is applied. *See American Family Mutual Insurance Co. v. Johnson*, 816 P.2d 952 (Colo.1991) (interpreting intentional injury exclusion).

■ Only when clauses of an insurance policy are ambiguous or conflict are they to be construed against the insurer and in favor of coverage for the insured. *State Farm Mutual Automobile Insurance Co. v. Nissen, supra.*

We agree with plaintiffs that clause 3 quoted above can be read to authorize payment by insurer of a proportion of the insureds' damages up to the limit of the policy. Nevertheless, we perceive no conflict between this interpretation and clause 5, which clearly limits compensation in the intra-company context. *See Menke v. Country Mutual Insurance Co.*, 78 Ill.2d 420, 36 Ill.Dec. 698, 401 N.E.2d 539 (1980) (finding no ambiguity in limiting liability to highest limit under one policy within the company).

Whether clauses 3 and 5 conflict must be evaluated within the policy's "Uninsured Motorist Coverage" part as a whole. Just as a coverage grant clause must be read in conjunction with the exclusions or limits of liability sections to determine the extent of coverage, so too the clauses within the "Other Insurance" section must be read together. *See Union Insurance Co. v. Houtz, supra; see also J & S Enterprises, Inc. v. Continental Casualty Co.*, 825 P.2d 1020, 1023 (Colo. App.1991) ("[A]ll parts and clauses of a contract, including exceptions and conditions, must be considered together in order to determine if one particular clause is explained, modified, limited or controlled by any other clause.").

■ When a policy is read as a whole, a limitation by one clause does not create a policy ambiguity if, as here, the clauses address two different concepts. *See Shelter Mutual Insurance Co. v. Breit*, 908 P.2d 1149 (Colo.App.1995) (no ambiguity when one clause limits insured's compensable loss to the highest amount payable on any one policy and another clause establishes the *pro rata* percentage of that maximum for which insurer will be liable).

Here, clause 3 of the "Other Insurance" section limits insurer's liability to its "share." The clause establishes that insurer will be neither primarily liable nor only liable for the excess over other insurance, but rather, it will be proportionally liable, with the proportion calculated as a percentage of the total of all "applicable" liability limits. By the terms of the policy, however, a proportion is calculated—a share is paid—only if there is "any other collectible insurance."

Plaintiffs argue, however, that clause 3 is applicable here because all four of the driver's policies are "collectible" since insurer is not insolvent. While we agree with plaintiffs that the term "collectible insurance" must exclude policies of insolvent insurers, *see Deisch and Marion, P.C. v. International Insurance Co.*, 771 P.2d 19 (Colo.App.1989), particularly in light of clause 5, the term cannot reasonably be limited to exclude only such policies. *See Parrish Chiropractic Centers v. Progressive Casualty Insurance Co.*, 874 P.2d 1049 (Colo.1994) (ambiguity must be shown on face of document before assigning a technical interpretation to a term); *see also Union Insurance Co. v. Houtz, supra* (policy must be read as a whole).

■ The term "collectible" means that which one can claim as due and receive payment for. *Webster's New Collegiate Dictionary* 220 (1974) (defining "collect"); *see also Black's Law Dictionary* 238 (rev. 5th ed.1979) (defining "collectible" as "liabilities that one may be made to pay by means of legal process"). In the insurance context, "collectible insurance" has been more generally interpreted to mean that which is actually available to an insured under applicable policies, or actually collected or received by the insured. *See Farmers Insurance Exchange v. Wiglesworth*, 903 P.2d 659 (Colo. App.1994), *rev'd on other grounds*, 917 P.2d 288 (Colo.1996); *Eisenhower Hospital Osteopathic v. Taylor*, 43 Colo.App. 498, 609 P.2d 1114 (1979) (excess policy not collectible until limits of primary policy have been exceeded); *see also Miller v. Safety Mutual Casualty Corp.*, 497 So.2d 1273 (Fla.Dist.Ct.App.1986) (collectible refers to liability limit, not benefits actually collected).

Here, clause 5 provides that only one insurance policy issued by the company is collectible, *i.e.*, available to the insureds, from insurer. Thus, giving effect to clause 5, there is no "other collectible insurance" and no purpose in applying clause 3 to prorate liability. *See Woolston v. State Farm Mutual Insurance Co.*, 306 F.Supp. 738 (W.D.Ark. 1969).

■ That a proration clause must be viewed as irrelevant when, as here, a policy contains a separate, intra-company anti-stacking clause and all applicable policies have been issued by one insurer is also consistent with the typical use of a proration clause. A *pro rata* clause is just one clause of the standard insurance industry *inter-company* anti-stacking provision that is intended both to limit the amount of total recovery to that available under one policy, and to distribute that liability among companies. *See 5 No–Fault and Uninsured Motorist Liability Insurance* App. D–7, § V.E. (Standard Uninsured Motorist Endorsement

(Other Insurance section)(1996)); *see also Shelter Mutual Insurance Co. v. Thompson,* 852 P.2d 459 (Colo.1993) ("Other Insurance" section language).

Indeed, in contrast to the clauses under scrutiny here, insurers generally have been unsuccessful when they have attempted to use a liability limit in combination with a proration clause to preclude *intra-company* stacking. In such instances—when the policy at issue has not had an applicable provision similar to clause 5 which explicitly precludes such stacking—various courts, based on determinations to the effect that a proration clause has no application in an intra-company context, have declared such policies ambiguous and allowed stacking. *See Glidden v. Farmers Automobile Insurance Ass'n,* 57 Ill.2d 330, 312 N.E.2d 247 (1974); *United Security Insurance Co. v. Mason,* 59 Ill. App.3d 982, 17 Ill.Dec. 507, 376 N.E.2d 653 (1978); *United Services Automobile Ass'n v. Dokter,* 86 Nev. 917, 478 P.2d 583 (1970).

And, finally, although plaintiffs place great reliance on the interpretation of the "Other Insurance" clauses in *Compton v. State Farm Mutual Automobile Insurance Co.,* 870 P.2d 545 (Colo.App.1993) to support their contentions, we remain unpersuaded.

In *Compton v. State Farm Mutual Automobile Insurance Co., supra,* 870 P.2d at 547, the "Other Coverage" section of the Uninsured Motorist part provided:

If There is Other Coverage

1. If the insured sustains bodily injury as a pedestrian and other uninsured motor vehicle coverage applies:

a. the total limits of liability under all coverages shall not exceed that of the coverage with the highest limit of liability; and

b. we are liable only for our share. Our share is the per cent of the damages that the limit of liability of this coverage bears to the total of all uninsured motor vehicle coverage applicable to the accident.

While the *Compton* court found this provision to be ambiguous in the inter-company stacking context, that determination is not dispositive here because those policy provisions can be distinguished. *See American*

*Family Mutual Insurance Co. v. Johnson, supra* (holding that, in light of differing circumstances, interpretation of identical intentional acts exclusion in previous decision was not controlling).

In *Compton,* unlike here, the policy language at issue was contained in a single provision with two sentences which addressed the same concept—the amount payable. While the first clause of the first sentence of the provision purported to cap payment as the limit of one policy, the second sentence, a variation on the proration clause at issue here, purported to commit the insurer to pay a "per cent *of the damages.*" Thus, in *Compton,* the division found those sentences to conflict and, therefore, interpreted the policy to the advantage of the insured.

Furthermore, in *Compton,* in contrast to the circumstances here, application of the proration clause was appropriate since the policies there were issued by three separate providers. *See also Kline v. American States Insurance Co.,* 924 P.2d 1150, (Colo. App.1996) (finding proration clause which promises to pay "our share of the loss" conflicts with liability limit clause when injured party covered by two separate policies issued to divorced parents by one insurer).

## II.

■ Plaintiffs also contend that the trial court erred in applying clause 5 to preclude recovery of more than $22,830, the per occurrence limit of one of the driver's policies ($100,000) minus payments made by the underinsured motorist ($77,170). Plaintiffs argue that each victim should be compensated at least to the per person uninsured motorist limit of one policy ($50,000). Here, that would result in payment of $272,830 ($50,000 per victim minus the $77,170 already paid by the underinsured motorist, pursuant to clause 2 quoted above). We perceive no error by the trial court.

In making their assertion, plaintiffs assume that when there are several injured persons, allowing each to recover the per person limit of one of several policies would

not be "stacking," and, therefore, would not be controlled by an anti-stacking provision such as clause 5. Based on this, they also assume that neither the statutory authorization of anti-stacking language, nor precedent upholding anti-stacking provisions as consistent with public policy in Colorado, *see Shelter Mutual Insurance Co. v. Thompson, supra,* is controlling here. On these premises, plaintiffs conclude that those same public policy considerations that underlie the uninsured motorist provisions, *i.e.,* assuring widespread availability of insurance protection against irresponsible motorist, compel payment of at least one underinsured per person policy limit per victim.

However, the driver's policies provided for a per occurrence limit of $100,000 in the declarations. And, it is clear from the "Limits of Liability" section of the "Uninsured Motorist Coverage" that the per occurrence limitation applied regardless of the number injured in any one accident. The section provided that:

The limits of liability shown in the Declarations apply subject to the following:

. . . .

2. Subject to the limit for 'each person', the limit for 'each occurrence' is the maximum combined amount for bodily injury sustained by two or more persons in any one occurrence.

3. . . . we will pay no more than these maximums *regardless of the number · of vehicles insured, insured persons, claims, claimants, policies,* or vehicles involved in the occurrence. (emphasis added)

This otherwise valid and unambiguous per occurrence liability limit of the driver's policies cannot be ignored. Consequently, and for several reasons, we reject plaintiffs' contention.

First, there is a clear statutory basis for use of a per occurrence limit on liability when two or more persons are injured. Section 10–4–609(2), C.R.S. (1994 Repl. Vol 4A) sets both per person and per accident limits for the amount of uninsured motorist coverage an insurer is required to offer an insured. *Cf.* 3 I. Schermer, *Automobile Liability Insurance* § 31.02[4.1] (2d ed.1994) (coverage

limited to the amount stated in the limits of liability section when there is only one accident even though the accident may have involved multiple uninsured vehicles).

And, plaintiffs do not suggest that a per occurrence limit is itself contrary to public policy. Indeed, just as a per accident limit is used to determine whether underinsured motorist coverage applies when several insureds are injured in one accident, *see Heirs of Leetz v. Amica Mutual Insurance Co.,* 839 P.2d 511 (Colo.App.1992), so too a policy's clearly stated per accident limit is properly used to calculate insurer's liability in such a situation. *See Union Insurance Co. v. Houtz, supra.*

Furthermore, anti-stacking and per occurrence policy limits are distinct limitations on liability, and contrary to plaintiffs' contention, application of a per occurrence limit coupled with an anti-stacking provision is not inconsistent with the purpose of Colorado's underinsured motorist statute—to place the insured in the same position as if the underinsured had liability limits in an amount equal to an insured's coverage. *See Union Insurance Co. v. Houtz, supra; see also Heirs of Leetz v. Amica Mutual Insurance Co., supra.*

An insured is entitled to the benefits of coverage only "to the extent necessary to fully compensate the insured for the loss, *subject to the limits of the insurance contract." Kral v. American Hardware Mutual Insurance Co.,* 784 P.2d 759, 766 (Colo.1989) (emphasis added); *see also* § 10–4–609(4), C.R.S. (1994 Repl.Vol. 4A) (defining underinsured motorist); *see generally* 3 *No–Fault and Uninsured Motorist Liability Insurance* § 30.40[2][c] (1996) (contrasting purpose of statutes like those in Colorado, in which tortfeasor's liability coverage is compared to insured's coverage, with other state statutes with stated purpose to afford an injured insured a means for recovery of all damages). When, as here, the per occurrence limit is clear, and a clause precludes stacking, there is full compensation up to the limit of the policies. *See Union Insurance Co. v. Houtz, supra.* Moreover, insurers are not required by statute to offer higher limits of uninsured motorist coverage than the insured's own liability limits. *See* § 10–4–609(2). Here, the driver's policies not only precluded intra-

company stacking of uninsured motorist coverage, but of general liability coverage as well. *See American Standard Insurance Co. v. Ekeroth,* 791 P.2d 1220 (Colo.App.1990) (under general automobile liability policy, anti-stacking language of policy applicable and not void as against public policy). Consequently, if applicable here, the driver's liability coverage would similarly have limited compensation to $100,000 per accident.

For these reasons, and because plaintiffs have cited no authority to suggest that the supreme court's holding in *Shelter Mutual Insurance Co. v. Thompson, supra,* should be limited to situations in which the per person limit of a policy is at issue, we perceive no basis to ignore the per occurrence limit and disregard the anti-stacking provision.

### III.

Finally, plaintiffs contend that the doctrine of reasonable expectations requires that the policies be interpreted to allow stacking. We disagree.

The doctrine of reasonable expectations supplements, but does not substitute for, the rule that insurance policies are to be construed according to well-settled principles of contract interpretation. *See Davis v. M.L.G. Corp.,* 712 P.2d 985 (Colo.1986) (doctrine of reasonable expectations may be appropriate in unique circumstances of extreme unconscionability); *Shelter Mutual Insurance Co. v. Breit, supra; cf. Chacon v. American Family Mutual Insurance Co.,* 788 P.2d 748 (Colo.1990).

Unlike the policies to which the doctrine has been applied, the policy language here, as discussed, is not conflicting, ambiguous, or contrary to public policy. *See Shelter Mutual Insurance Co. v. Breit, supra.* Thus, we may not use the doctrine of reasonable expectations here to allow otherwise clearly prohibited stacking of intra-company uninsured motorist benefits.

The judgment is affirmed.

BRIGGS and TAUBMAN, JJ., concur.