**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 7 1999**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

RICKY ALLEN MARTINEZ,
Personal Representative of the Estate
of surviving spouse of Audrey Marie
Martinez, deceased, and as father
and next-friend of SHANTAE
MARTINEZ, EULALIO MARTINEZ
and JOSE MARTINEZ, the minor
surviving children of Audrey Marie
Martinez, deceased,

        Plaintiff-Appellant,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, a foreign insurance
corporation,

        Defendant-Appellee.

No. 98-2153
(D.C. No. CIV-96-862-MV)
(D. N.M.)

---

**ORDER AND JUDGMENT** [*]

---

Before **TACHA** , **BARRETT** , and **MURPHY** , Circuit Judges.

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Plaintiff brought this diversity action for a determination of underinsured motor vehicle (UIM) coverage.  Applying Colorado law to the undisputed facts, the district court concluded that defendant State Farm Mutual Automobile Insurance Co. had no UIM liability, and entered summary judgment accordingly. Plaintiff moved for reconsideration pursuant to Fed. R. Civ. P. 59(e), and, when that motion was denied, timely appealed. [1]  On de novo review,  see State Farm Mut. Auto. Ins. Co. v. Blystra , 86 F.3d 1007, 1010 (10th Cir. 1996), we affirm for the two alternative reasons stated below.

Plaintiff's wife was killed and his daughter was injured in an automobile accident in New Mexico caused by the negligence of Joseph Juhasz.  Plaintiff, as representative of his wife's estate and father/next friend of his children, settled all claims arising out of the accident for $195,000 payable by Mr. Juhasz's liability carrier and $56,500 payable by Mr. Juhasz personally.     See Appendix

---

[1]     We agree with plaintiff that State Farm's argument for dismissal of this appeal as untimely is meritless.  Plaintiff's Rule 59 motion was timely filed within ten days of the entry of judgment, excluding intermediate weekends and legal holidays, and, thus, tolled the time for appeal until the motion was denied. See Fed. R. Civ. P. 6, 59(e); Fed. R. App. P. 4(a)(4).

of Appellant (App.) at 30.  Other injured parties collected the additional $305,000 remaining under the $500,000 per-accident limit of Mr. Juhasz's liability policy. Thereafter, plaintiff brought this action against his own insurer, State Farm, for a declaration of UIM coverage under two policies which had been negotiated and purchased in Colorado. [2]

The district court first determined that, pursuant to New Mexico conflict of law principles, Colorado law controlled the contract issues in the case.        See State Farm Auto. Ins. Co. v. Ovitz    , 873 P.2d 979, 981 (N.M. 1994) (law of state where accident occurred governs tortfeasor's liability, but law of state where insurance contract was executed governs consequent coverage issues).  We agree.  Indeed, in district court, plaintiff also agreed that Colorado law controlled the coverage questions to be decided,    see App. at 5, but now insists that the same questions are "damages" issues which under     Ovitz must be resolved by reference to New Mexico law,   see Opening Br. at 8-9.  This argument has been waived, see, e.g. , Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency     , No. 97-5216, 1999 WL 212078, at *13 n.2 (10th Cir. Apr. 13, 1999), and in any event clearly places the coverage issues in this case on the wrong side of        Ovitz 's distinction

---

[2]    Under the operative contractual terms,    see App. at 11-13, we disregard the fact that there are two redundant State Farm UIM policies involved.        See Shean v. Farmers Ins. Exch.   , 934 P.2d 835, 837-39 (Colo. Ct. App. 1996).

between insurance policy questions and the determination of underlying tort liability.

The applicable Colorado statute, which was incorporated into the policy under review, mandates UIM coverage as a subspecies of uninsured motorist (UM) coverage, for damages the "insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle."  Colo. Rev. Stat. § 10-4-609(4).  An underinsured motor vehicle is defined as

> a land motor vehicle . . . insured or bonded for bodily injury or death at the time of the accident, but [for which] the limits of liability for bodily injury or death under such insurance or bonds are:
> (a) Less than the limits for uninsured motorist coverage under the insured's policy; or
> (b) Reduced by payments to persons other than an insured in the accident to less than the limits of uninsured motorist coverage under the insured's policy.

Id.  The statute also establishes an upper limit on the UM/UIM liability of the insurance carrier:

> The maximum liability of the insurer under the uninsured motorist coverage provided shall be the lesser of:
> (a) The difference between the limit of uninsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or
> (b) The amount of damages sustained, but not recovered.

Colo. Rev. Stat. § 10-4-609(5).  Each of these provisions bars plaintiff's recovery here.

Mr. Juhasz's liability coverage of $300,000 per person and $500,000 per accident exceeds the corresponding UIM limits of $50,000 and $100,000 in plaintiff's State Farm policy, precluding UIM coverage under § 10-4-609(4)(a). Consequently, plaintiff relies on § 10-4-609(4)(b), which triggers coverage when payments to other injured parties reduce the funds available under the tortfeasor's liability policy to less than the applicable UIM limits. However, subtracting $305,000 from Mr. Juhasz's $500,000 per accident limit still leaves a remainder in excess of the per accident limit on plaintiff's policy, again precluding UIM coverage. Thus, plaintiff must argue that, in applying § 10-4-609(4)(b), the total payout to all others injured in the accident should be deducted from the tortfeasor's *per person* limits and the result compared to the corresponding limits on plaintiff's UIM coverage.

The district court rejected this argument, citing several decisions from other states which have concluded that per accident, not per person, limits control UIM coverage issues in multiple-claimant situations. See App. at 39 n.1. The court buttressed its decision, which it acknowledged would not leave plaintiff fully compensated for his loss, by noting that the purpose of the Colorado UIM scheme "is not to guarantee full compensation for a claimant's injuries but rather is 'to place the injured party having [UIM] coverage in the same position as if the underinsured had liability limits in amounts equal to the insured's coverage. That

will not necessarily result in the injured being compensated to the full extent of his or her injuries.'" Id. at 40 (quoting Leetz v. Amica Mut. Ins. Co., 839 P.2d 511, 513 (Colo. Ct. App. 1992)).

On appeal, plaintiff argues the district court should have followed another line of (non-Colorado) authority, in particular State Farm Mutual Automobile Insurance Co. v. Valencia, 905 P.2d 202 (N.M. Ct. App. 1995), which would support resort to the per person limit here. We disagree. The district court's reliance on the per accident limit is consistent with the only pertinent Colorado case law. In a related factual context, the Leetz court stated without qualification "that, when more than one person is injured, it is the per accident limit which must be used to determine whether [UIM] coverage applies," specifically noting its agreement with the very same non-Colorado authorities relied on by the district court here. Leetz, 839 P.2d at 513. This general rule was reaffirmed and extended in Shean v. Farmers Insurance Exchange, 934 P.2d 835, 840 (Colo. Ct. App. 1996), which held that the per accident limit also controls the application of § 10-4-609(5)'s cap on UIM liability "just as a per accident limit is used to determine whether [UIM] coverage applies [under Leetz's construction of § 10-4-609(4)]."

Indeed, Shean's recognition of the per-accident principle in the context of the UIM liability limit under § 10-4-609(5) points up an alternative basis for

affirmance of the district court's disposition. Under the plain language of this section, quoted above, the UIM insurer's liability is limited "to the gap between the amount an insured receives from an underinsured driver and the insured's UIM policy limits." Freeman v. State Farm Mut. Auto. Ins. Co., 946 P.2d 584, 585 (Colo. Ct. App. 1997). Thus, the maximum UIM benefit for the injured party is subject to a set-off for all payments already received from the tortfeasor. See, e.g., Carlisle v. Farmers Ins. Exch., 946 P.2d 555, 557 (Colo. Ct. App. 1997); Shean, 934 P.2d at 839-40. As noted above, plaintiff received a total of $251,500 from Mr. Juhasz and his carrier--leaving no gap at all between actual recovery and the maximum UIM benefit of $100,000. Thus, even if plaintiff had established the *existence* of UIM coverage under § 10-4-609(4), the limit specified in § 10-4-609(5)(a) would bar recovery under such coverage as exceeding State Farm's maximum UIM liability in any event.

The purpose of Colorado's UIM scheme is to place injured parties in the same financial position they would have been in if the tortfeasor had available liability coverage equal to their UIM coverage. See Shean, 934 P.2d at 840. See generally Estate of Harry ex rel. Harry v. Hawkeye-Security Ins. Co., 972 P.2d 279, 281 (Colo. Ct. App. 1998) ("The purpose of UM/UIM coverage is to compensate an insured for loss caused by . . . financially irresponsible motorists, *subject to the insured's policy limits*." (emphasis added)). Here,

plaintiff was left in a significantly better position than if Mr. Juhasz had paid

him the $100,000 his UIM coverage assured him of receiving.

The judgment of the United States District Court for the District of

New Mexico is AFFIRMED.


Entered for the Court


Deanell Reece Tacha
Circuit Judge